## O'CONNOR v. UNITED STATES.
### No. 11911.

United States Court of Appeals
Ninth Circuit.

June 23, 1949.

Rehearing Denied July 26, 1949.

Howard B. Crittenden, Jr., Hyman & Hyman, San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., Robert B. McMillan, Asst. U. S. Atty., Walter M. Campbell, Sp. Asst. to the U. S. Atty., San Francisco, Cal., for appellee.

Before MATHEWS, HEALY, and POPE, Circuit Judges.

HEALY, Circuit Judge.

Appellant was indicted under § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b), for willfully evading payment of income taxes. The indictment contained three counts, the first involving the calendar year 1942, the others the calendar years 1943 and 1944. A verdict of guilty was returned as to the first count but the jury failed to agree in respect of counts two and three. Reversal is sought on a variety of grounds. These relate to the claimed insufficiency of the evidence to support the verdict, to the court's denial of a request for a bill of particulars, and to prejudicial errors said to have occurred during the course of the trial and in the giving or refusal of instructions.

Briefly, the record shows that throughout the period covered by the indictment appellant conducted a tavern or bar in San Francisco. During the first half of 1942 she operated the business with a partner, but on July 15 of that year she bought the partner's interest and thereafter conducted the

business as sole proprietor. During the course of the partnership a gray-bound ledger was kept which purported to disclose the daily receipts and disbursements, entries being made by each partner. At the termination of the partnership this record was left on the premises and there is evidence that appellant continued until August 23, 1942, to enter in the book the daily receipts of the business.

In the course of an examination of appellant's tax returns for the years in question a deputy collector asked appellant to produce her business records. She produced a daybook, referred to in the record as the black book, purporting to show receipts and disbursements of the tavern for the period July 16, 1942 to the end of 1944, stating that the entries therein were made by herself. This was the book she had supplied to the accountant who prepared her returns, and it was his sole source of information as to tavern receipts for the period July 15, 1942 to the end of 1944. Entries in the gray-bound ledger for the period July 16 to August 23, 1942, shown by competent experts to be in appellant's handwriting, disclosed tavern receipts averaging $17 a day more than the daily receipt figures entered in the black book furnished for the use of her own accountant. There were attempted obliterations in the receipts column of the gray book, and similar obliterations were found on appellant's check stubs examined by the revenue agent. Being unable to rely on the entries in the black book the agent labored to arrive at the income of appellant by three different and factually supported methods which were fully explained to the jury. The methods produced comparable figures, all greatly in excess of the income reported. The jury apparently found this analysis persuasive, at least as to the year 1942, and we are not able to say their conclusion was at fault. It was shown, also, that the black book contained false entries relative to charitable contributions; and there was proof that during the period covered by the indictment appellant purchased and completely paid for an apartment house at a cost in excess of her total reported income. In short, there was abundant evidence to support the charge of willful tax evasion.

Appellant demanded a bill of particulars, which particulars were in part supplied by government counsel and in part refused with court approval. We are satisfied that the court did not abuse its discretion in its ruling in this respect. Compare the analogous case of Maxfield v. United States, 9 Cir., 152 F.2d 593. The indictment itself set out rather fully the ultimate facts sought to be proved by the government. Appellant had at all times possession of her own records or reasonable access to them. There had, moreover, been an earlier trial on the indictment resulting in a jury disagreement, so that the government's case had already been substantially disclosed.

Between the first and second trials the department caused a new audit to be made, apparently with the idea of resolving doubtful matters in appellant's favor. This audit was made by one Krause. He testified from schedules prepared from appellant's books and records and from schedules agreed upon with counsel for the defense, all of these being then placed in evidence. Appellant complains of the failure of the government to introduce Krause's voluminous work sheets as well, but we see no substance in the complaint. The work sheets, which were offered counsel for use in cross-examination, were no more than recapitulations of matters in evidence and their introduction would have served only to confuse or encumber the record.

Appellant called, purportedly as an adverse witness, another revenue agent who had made the audit used on the first trial and who had testified on that trial. She attempted to discredit him by questions concerning his personal conduct while he was a visitor at her home. The court properly sustained objections to this line of inquiry since the agent was appellant's own witness and the incident was wholly immaterial. It is argued as a reason for questioning this witness that there were differences or conflicts between his audit and the one Krause had made for use on the second trial, but if that be so the former's work

was available for appellant's use on cross-examination of Krause. The court was liberal in its treatment of appellant in this as in all other respects, giving her more latitude, probably, than she was entitled to.

The court's instructions were full and fair and no objections were made to them when given as required by Rule 30 of the Criminal Rules, 18 U.S.C.A. Appellant herself proposed a large number which the court declined to give. We have examined these proposals and find no error in the failure to charge as requested. In sum, the trial was carefully and fairly conducted and a study of the record discloses no grounds for a reversal.

Judgment affirmed.