McCormack, J.
(concurring). I join all but part III(D) and footnote 9 of the majority opinion. I write separately for two reasons: first, to elaborate on the majority’s discussion of the tension between the holdings in Raffel v United States[1] and Doyle v Ohio[2] and second, to note that the law remains unclear concerning the evidentiary value of a defendant’s silence even if its admission is not barred by the United States Constitution. Accordingly, while there are significant points on which I agree with part III(D) of the majority opinion, I believe it is also important to highlight countervailing concerns regarding the use of silence.
As the majority opinion correctly observes, Raffel has not been overruled, and the United States Supreme Court has recognized its continued vitality. I further agree with the majority that the Court of Appeals’ attempts to distinguish Raffel are not persuasive. For these reasons, I agree that under controlling precedent the Constitution does not bar the admission of evidence concerning defendant’s silence at his first tried.
*282 I am doubtful, however, that much of Raffel’s reasoning remains sustainable in light of the subsequent Doyle decision. In particular, Raffel's holding that any Fifth Amendment protection is waived when a defendant elects to testify at his or her second trial and the prosecution questions the defendant about his or her failure to testify at the first trial seems incompatible with Doyle’s reasoning. Doyle explained that “it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.”[3] Thus, questioning a defendant about why he or she did not testify at an earlier trial casts the defendant’s prior silence in a negative fight when the defendant might have previously relied on a constitutional protection — something expressly forbidden by Doyle.[4] And as the majority observes, silence at trial is also post-Miranda silence. Moreover, the compulsion to speak at a first trial is similar to the compulsion to speak during a custodial interrogation by police. In both scenarios, the suspect/defendant is being accused of committing a crime and presented with the evidence supporting his or her guilt.
Thus, while I recognize that “no Court opinion decided since Raffel has challenged its holding that the Fifth Amendment is not violated when a defendant is impeached on the basis of his prior silence,”[5] *283 the significance of that statement is highly questionable in light of the due process rationale of Doyle.[6] Because Jenkins involved the question of whether it was permissible to comment on a defendant’s prearrest silence, which might very well not involve reliance on a constitutional protection because the suspect might be unaware of his or her right to remain silent,[7] the Supreme Court in Jenkins was not forced to directly confront the tension between Raffel and Doyle.[8]
In this case, that tension is both present and particularly concerning because it is readily apparent from the record that defendant relied on his Fifth Amendment right in choosing to remain silent after receiving Miranda *284 warnings.[9] Thus, the precise unfairness about which the Doyle Court was concerned — allowing impeachment using silence premised on the assertion of a constitutional right — is present in this case. While the majority correctly holds that “defendant’s post-arrest, post -Miranda silence with the police is inadmissible,” the competing rationales set forth in Raffel and Doyle are not easily reconcilable with regard to the period following a post-Miranda police interrogation.[10] Nor are they any more consistent when the silence occurred at a prior criminal proceeding. In other words, that a defendant waives his or her Fifth Amendment right when he or she chooses to take the stand, yet due process and fundamental fairness prohibit impeachment of a testifying defendant with post -Miranda silence because the defendant relied on that right, presents an analytical Gordian knot.
Despite this unresolved conflict in the law, I concur with the majority opinion because Raffel is directly controlling here and has not been overruled, whereas *285 Doyle has not been extended to this context. Thus, it must be the correct result unless or until the United States Supreme Court reconciles the adverse rationales underlying its holdings in Raffel and Doyle. I look forward to that case.
My second and related point involves the use of a defendant’s silence as an evidentiary matter. While part III(D) of the majority opinion articulates the arguments for why the use of silence is not barred under the Fifth Amendment, I believe it is important to identify some factors militating against a broad rule in favor of admissibility as an evidentiary matter. To begin with, it is telling that in the same case in which the United States Supreme Court recognized the continued vitality of Raffel, it nevertheless noted that state courts “remain[] free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial.”[11] This Court has done so on several occasions.[12] The United States Supreme Court and many commentators recognize that “every post-arrest silence is insolubly ambiguous . . . .”[13] As one court has observed:
The right of an accused not to testify is absolute; he may not even be called as a witness unless he so chooses. To *286 view his decision not to testify as being inconsistent with a later exculpatory statement would be to presume that the exercise of a right that is inextricably linked to the presumption of innocence constitutes conduct that can be viewed as inconsistent with innocence. Although such cross-examination might not be unconstitutional, the constitutional context in which the privilege is initially asserted strips it of the evidentiary value it might otherwise be thought to have.[14]
Thus, while part III(D) of the majority opinion thoroughly discusses the policy rationales for why the Fifth Amendment does not bar impeachment with prior silence when a defendant chooses to testify, it is important to note that equally compelling countervailing policies have led many courts to exclude such impeachment evidence given its potential to be highly prejudicial. The majority correctly leaves it for the trial court to decide in the first instance whether testimony concerning defendant’s silence at the first trial is admissible as an evidentiary matter, including an inquiry into whether its admission would be substantially more prejudicial than probative under MRE 403.
With these observations, I do not join part III(D) or footnote 9, but otherwise concur with the Court’s excellent opinion.

 Raffel v United States, 271 US 494; 46 S Ct 566; 70 L Ed 1054 (1926).

 Doyle v Ohio, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976).

 Id. at 618.

 Poulin, Evidentiary use of silence and the constitutional privilege against self-incrimination, 52 Geo Wash L R 191, 215 (1984) (“Thorough analysis reveals that impeachment use of privileged silence impairs the policies underlying the fifth amendment privilege. Permitting impeachment by silence invades the accused’s mental privacy protected by the fifth amendment because the government can use the silence as insight into the accused’s mind, to discredit his sworn in-court testimony.”).

 Jenkins v Anderson, 447 US 231, 237 n 4; 100 S Ct 2124; 65 L Ed 2d 86 (1980).

 See, e.g., id. at 241 n 2 (Stevens, J., concurring) (“[T]here is a serious question about the continuing vitality of Raffel.’’); id. at 245 n 10 (“It strikes me as anomalous that, assuming Raffel has survived Doyle, a defendant who takes the stand is deemed to waive his Fifth Amendment objection to the use of his pretrial silence, but not to waive what I regard as a much less focused, and hence weaker, due process objection. Perhaps the Court’s opinion can best be understood by assuming that Raffel is not good law on its facts under the Doyle rationale.”) (citation omitted); see also Raithel v State, 40 Md App 107, 117; 388 A2d 161 (1978) (“The reasoning employed in Johnson [v United States, 318 US 189; 63 S Ct 549; 87 L Ed 704 (1943)], Grunewald [v United States, 353 US 391; 77 S Ct 963; 1 L Ed 2d 931 (1957)], and Doyle is fundamentally inconsistent with the notion contained in Raffel that an accused completely waives his privilege against self-incrimination by testifying and it makes no difference that an accused’s prior silence might then be used as a weapon against him.”).

 But see Brief for the American Civil Liberties Union as Amicus Curiae in Salinas v Texas, _ US _; 133 S Ct 928; 184 L Ed 2d 719 (2013) (granting cert), filed February 26, 2013, p 15 (“Now, in 2013, pre-arrest, pre-Miranda silence is just as likely to be attributed- to pre-existing knowledge of Miranda’s rights as to any other reason .. . .”).

 Jenkins, 447 US at 240 (“The failure to speak occurred before the petitioner was taken into custody and given Miranda warnings. Consequently, the fundamental unfairness present in Doyle is not present in this case.”).

 When the prosecution asked defendant why he didn’t think it was important enough to tell the police the same story he told the jury at his second trial, defendant answered “I exercised my Fifth Amendment Right.” Although defendant did not repeat this assertion in response to questioning about why he did not testify at his first trial, Doyle does not require that a defendant have actually relied on his Fifth Amendment right for due process to be violated; it is sufficient that he may have relied on that right. See Doyle, 426 US at 619 n 10.

 See Brecht v Abrahamson, 507 US 619, 628-629; 113 S Ct 1710; 123 L Ed 2d 353 (1993) (“[T]he State’s references to petitioner’s silence after [receiving Miranda warnings], or more generally to petitioner’s failure to come forward with his version of events at any time before trial crossed the Doyle line.”) (emphasis added; citation omitted); Gov’t of Virgin Islands v Davis, 561 F3d 159, 164-165 (CA 3, 2009) (rejecting the government’s argument that “Doyle only limits a prosecutor from referencing at trial a defendant’s post -Miranda silence at the time of his arrest, and that Raffel thus permits impeachment at trial on the defendant’s silence during any other time prior to trial” in part on the basis of “the obvious distinction that Raffel speaks only to the privilege against self-incrimination rather than due process”).

 Jenkins, 447 US at 240.

 See, e.g., People v Cetlinski (After Remand), 435 Mich 742, 760; 460 NW2d 534 (1990) (noting that the Court has “adopted the evidentiary rule that nonverbal conduct by a defendant, a failure to come forward, is relevant and probative for impeachment purposes when the court determines that it would have been ‘natural’ for the person to have come forward with the exculpatory information under the circumstances”), citing People v Collier, 426 Mich 23; 393 NW2d 346 (1986).

 Doyle, 426 US at 617. See also United States v Hale, 422 US 171, 176; 95 S Ct 2133; 45 L Ed 2d 99 (1975) (“In most circumstances silence is so ambiguous that it is of little probative force.”). See generally Thompson, Methinks the lady doth protest too little: Reassessing the probative value of silence, 47 U Louisville L R 21 (2008).

 Commonwealth v Jones, 229 Pa Super 236, 245-246; 327 A2d 638 (1974).